IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL HOYT**<br>             **Plaintiff,**<br><br>         **v.**<br><br>**PENNSYLVANIA DEPARTMENT OF<br>CORRECTIONS D/B/A SCI-PHOENIX,<br>et. al.,**<br>             **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO.  23-CV-02163** |

<u>**MEMORANDUM**</u>

**J. HODGE, K.**                                                                    **March 29, 2024**

### I.    INTRODUCTION

Plaintiff Paul Hoyt ("Plaintiff" or "Hoyt"), a former[1] inmate at Pennsylvania State Correctional Institution – Phoenix ("SCI-Phoenix"), suffered serious injuries during his incarceration when he fell from his top bunk in the middle of the night of April 14, 2022. Plaintiff brought the instant claim against various prison officials under 42 U.S.C. § 1983, alleging that the officials were deliberately indifferent to his medical condition in violation of the Eighth Amendment, ("Count I") and under Pennsylvania state law, alleging simple negligence ("Count II"). (ECF No. 8, at 5-7.) Two Defendants, Dr. Anthony Letizio and Steven Kaminsky, PA-C, ("Moving Defendants" or "Medical Defendants") now move for the dismissal of Plaintiff's claims. (ECF No. 11-2 at 1.) For the reasons below, the Court grants in part and denies in part the Motion to Dismiss ("Motion").

---

[1] Although the Complaint alleges that Hoyt is "presently" incarcerated at SCI-Phoenix (ECF No. 8 at1), Defendants allege that he was released on or about June 24, 2023 (ECF No. 11-2 at 2 n.2). Whether Hoyt is presently incarcerated, however, is inapposite to this analysis, as he was, at all times relevant to the litigation, incarcerated at SCI-Phoenix. (ECF No. 8 at 1.)

## II.    BACKGROUND

The events giving rise to Plaintiff's complaint began in August of 2021, when he was transferred from SCI-Camp Hill to SCI-Phoenix. (ECF No. 8 at 3-4.) According to the Complaint, Hoyt suffers from a rare, genetic, neuromuscular disorder, Central Core Disease or Central Core Myopathy ("CCD"), which has stunted his muscular development, and which limits his ability to control his muscular movements. (ECF No. 8 at 4.) As a result of this condition, Hoyt was placed on "bottom bunk status" at SCI-Camp Hill and remained assigned to the bottom bunk for his first seven months at SCI-Phoenix. (*Id.*)

Then, on or about April 11, 2022, Hoyt was informed that he had been removed from bottom bunk status, and "was not provided a reason why." (ECF No. 8 at 4.) Immediately thereafter, Hoyt complained to (non-moving) Defendant Smith, an SCI-Phoenix Unit Manager, that he "should have been given a bottom bunk." (*Id.*) Smith advised Hoyt that he would need "to put a sick call in to medical for them to change it." (*Id.*)[2] Three nights later, on or about April 14, 2022, Hoyt fell from his top bunk in the middle of the night, injuring his head, left knee, and left foot. (ECF Nos. 8 at 4; 11-2 at 3.) Hoyt avers that he "blacked out for approximately twenty minutes while his cellmate attempted to wake him up." (*Id.*) Thereafter, Hoyt was taken to "medical" in a wheelchair where Moving Defendant Kaminsky administered x-rays and informed Hoyt that he had fractured his left kneecap. (ECF Nos. 8 at 5; 11-2 at 3.)[3] To treat his injury that

---

[2] Neither the operative complaint, (ECF No. 8,) nor Plaintiff's Response in Opposition to Defendants' Motion, (ECF No. 12,) indicate whether Hoyt placed a "sick call" to "medical" before his injury.

[3] Hoyt was later seen by an orthopedic surgeon at Einstein Hospital, who allegedly informed Hoyt that 15%-20% of his left kneecap "chipped off" from the force of his fall. (ECF No. 8 at 6.)

night, Hoyt was given "bandages for his [fractured] knee and ibuprofen," and was returned to his top bunk. (*Id.*)

After the fall, Hoyt "put sick calls in to see the doctor," both to seek treatment for his injuries and to "continually" protest his top bunk assignment, but his calls were not answered. (ECF No. 8 at 5.)[4] Approximately one week after the fall, Hoyt was returned to the bottom bunk. (*Id.*) Hoyt further alleges that he was placed into a physical therapy program at SCI-Phoenix in the time following his fall. (ECF No. 8 at 5.) However, he continued to suffer "intense…daily" pain in his left leg and as the prison medical staff allegedly withheld pain medication, rendering him unable to complete physical therapy sessions. (*Id.*) Hoyt alleges that he filed at least three (3) grievances regarding improper medical treatment while incarcerated at SCI-Phoenix. (ECF No. 8 at 5.) Hoyt continues to suffer from severe physical and psychological stress as a result of his lack of treatment and avers that he has lost approximately 75 pounds since being incarcerated. (ECF No. 8 at 5-6.)

Plaintiff initiated this case by filing a Praecipe to Issue a Writ of Summons before the Court of Common Pleas of Montgomery County, Pennsylvania, on January 30, 2023. (ECF No. 1 at 4.) On May 23, 2023,[5] Plaintiff filed his Complaint naming a number of defendants associated with SCI Phoenix. (ECF No. 1 at 5.) Thereafter, on June 6, 2023, Defendants Letizio (Medical Doctor), Kaminsky (Physician's Assistant/ PA-C), Wellpath, LLC, and Jessamine Healthcare, Inc. filed a

---

[4] The Complaint alleges that Plaintiff repeatedly requested Defendant Smith place him back on the bottom bunk, but that such requests were denied. (ECF No. 8 at 5.) Because Defendant Smith is not party to the motion before the Court, we focus here on Hoyt's dealings with the medical staff – Dr. Letizio and PA Kaminsky – the Moving Defendants.

[5] Defendants' notice of removal (ECF No. 1) erroneously states that Plaintiff filed his complaint on May 23, **2024**, which has not yet occurred. The Court assumes this is a typographical error and that the Complaint was filed in **2023**.

Notice of Removal in the Eastern District of Pennsylvania, satisfying all the procedural requirements governing removal under 28 U.S.C. §§ 1441(a) and 1446(a). (ECF No. 1 at 6).[6]

Defendants Letizio, Kaminsky, Wellpath, LLC, and Jessamine Healthcare, Inc. filed this Motion on August 8, 2023.[7] (ECF No. 11-2 at 2.) In response to the instant Motion, Plaintiff withdrew his *Monell* claims against the corporate defendants, Wellpath, LLC and Jessamine Healthcare, Inc., leaving only those claims pertaining to individual Defendants Letizio, Kaminsky, Smith, and Rose. This Motion concerns only Dr. Letizio and PA Kaminsky.

## III.    LEGAL STANDARD

On a Motion to Dismiss a plaintiff's complaint, this Court must "[a]ccept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Such analysis may be accomplished in three steps. *See id.*, at 210. First, the Court should "take note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft*

---

[6] This Court has jurisdiction under 28 U.S.C. § 1331, as Plaintiff asserts a federal cause of action under 42 U.S.C. § 1983; and under 28 U.S.C. § 1367, as Plaintiff's state law claim forms part of the same controversy giving rise to his federal claim. Further, venue is appropriate in this district as the events giving rise to the action occurred, in large part, in this judicial district. (ECF No. 8 at 3.)

[7] On July 5, 2023, a number of prison officials named in Mt. Hoyt's initial Complaint moved for dismissal, including Defendant Terra (Superintendent of SCI-Phoenix), Defendant Sipple (Deputy Superintendent), Defendant Hensley (Deputy Superintendent), Defendant Wynder, (Deputy Superintendent), Defendant Selius, (former Business Manager), and Defendant Smith (Unit Manager). (ECF No. 7 at 4.) Plaintiff filed an Amended Complaint on July 19, 2023, which is the operative Complaint in the case, only naming as defendants Dr. Letizio, PA Kaminsky, Wellpath, LLC, Jessamine Healthcare, Inc., Unit Manager Smith, and Nurse Rose (for whom Plaintiff has no further identifying information). (ECF No. 8 at 1-3.) After filing the Amended Complaint, this Court denied Defendants' first Motion to Dismiss as moot. (ECF No. 16 at 1.)

*v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, where there are "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). At this stage in the case, all the plaintiff must do is "nudge [his] claims…across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

IV.   **DISCUSSION**

Plaintiff's operative Complaint contains two distinct claims. First, he alleges Moving Defendants "violat[ed]…Plaintiff's clearly establish[ed] and well settled Constitutional…rights." (ECF No. 8 at 6.) Specifically, he alleges that Moving Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.*) Second, he alleges that Moving Defendants breached their duty of care under state tort law by "failing to provide a safe environment for…inmates;" "failing to protect the well-being of inmates;" and "failing to properly provide Plaintiff with a bottom bunk." (ECF No. 8 at 7.) The Court will review these claims in turn.

A.  **Plaintiff's Eighth Amendment Deliberate Indifference Claim**

Dr. Letizio and PA Kaminsky move for the dismissal of the first count of Plaintiff's Complaint for failure to state a claim on which relief can be granted. (ECF No. 11-2 at 5-6.) Moving Defendants' primary contention is that Hoyt's allegations are insufficient to allege "how they personally violated Hoyt's constitutional rights with respect to his bunk status or subsequent medical treatment." (ECF No. 11-2 at 6.) Moving Defendants take the position that "[o]ther than the allegation that PA Kaminsky informed Hoyt that his kneecap had been fractured…there are no other factual allegations in the Amended Complaint for PA Kaminsky and Dr. Letizio." (ECF No.

5

11-2 at 5.) Further, Moving Defendants believe that Hoyt's clearest allegation is insufficiently specific, and impermissibly "lumps [Moving Defendants] together with Unit Manager Smith in alleging, 'Upon information and belief, Defendants Smith, Kaminski, and Latizzio [sic] were responsible for making the decision on whether Plaintiff had bottom bunk status.'" (ECF No. 11-2 at 5 (quoting ECF No. 8 at 5).) According to Moving Defendants, generalized allegations are insufficient to show the personal involvement required for a constitutional violation. (ECF No. 11-2 at 6.)

Plaintiff responds by arguing that his allegations are "sufficiently specific at this stage," and supports this allegation by providing that "housing assignments are totally controlled by the medical staff/Movants." (ECF No. 12 at 12.) Hoyt further alleges that Moving Defendants knew of his condition before his fall; that it is "obvious that someone with…CCD needs a bottom bunk;" and that a risk of injury based on housing assignments "should have been particularly obvious to the medical Defendants[.]" (*Id.*) Hoyt notes that, while the ultimate determination requires "an assessment of the facts, after discovery," he has plead his case with the specificity required to allege a constitutional violation at this early stage of the proceedings. The Court agrees.

While the Constitution "does not mandate comfortable prisons," neither does it "permit inhumane ones, and it is…settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (internal quotations omitted). As the Supreme Court has instructed, in the context of prison conditions, the Eighth Amendment imposes duties on prison officials to ensure "that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27). But in alleging a violation of the Eighth Amendment, a plaintiff/inmate must

do more than merely allege that prison conditions were, in *Farmer*'s parlance, "inhumane;" rather, he must also allege that the inhumane conditions resulted from the "deliberate indifference" of a prison official to the risk presented by the conditions. *Id.* at 834-35.[8]

Therefore, to state a claim for deliberate indifference under the Eighth Amendment, "a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 84 F.4th 217, 229 (3d Cir. 2023); *Pearson v. Prison Health Serv.*, 850 F.3d 546, 534 (3d Cir. 2017). Because the framework for analyzing deliberate indifference is subjective, depending on the actor's level of awareness and state of mind, stating a claim for such indifference requires a degree of particularity. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) ("A defendant in a civil rights action must have personal involvement in the alleged wrongdoing."); *and Gannaway v. Prime Care Medical Inc.*, 150 F.Supp.3d 511, 526-27 (E.D. Pa. 2015) ("Alleging a mere hypothesis that an individual defendant had personal knowledge of or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.").

The Court is satisfied that Plaintiff's factual allegations are sufficiently particularized in that they identify the role of Moving Defendants in the alleged harm, and plausibly connect a possible mental state of deliberate indifference with those factual allegations. If the facts as alleged in the Complaint are borne out through discovery, the course of action undertaken by Moving Defendants in this case is properly within the realm of Eighth Amendment review. This is so for a number of reasons. First, Hoyt's injury tends to suggest that his initial medical need was "serious."

---

[8] A prison official does not violate the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 837. This is consistent with the familiar standard of criminal recklessness, which is subjective and requires actual knowledge of the risk. *Id.*

*Durham*, 84 F.4th at 229. The fact that Hoyt was placed on "bottom bunk status" at SCI-Camp Hill, and that this continued for the first seven months of his incarceration at SCI-Phoenix, supports the factual allegation that his condition is medically serious. (ECF No. 8 at 4.) Even further, the injury occurred within 72 hours of Hoyt's assignment to the top bunk, tending to confirm that his need for bottom bunk placement was plainly serious. (*Id.*)

Second, and relatedly, the harm suffered by Plaintiff is causally connected to the decision to move him to top bunk status, satisfying the third prong contemplated by *Durham*. *See Durham*, 84 F.4th at 229 (requiring that "the deliberate indifference caused harm to the plaintiff"). Again, the Court is persuaded by the factual allegations pled in Plaintiff's complaint. Focusing on Hoyt's carceral term at SCI-Phoenix, we note that he incurred no CCD-related injuries for the first seven months of his incarceration while placed on the bottom bunk. (ECF No. 8 a 4.) That his injury occurred so quickly upon the decision to place Hoyt on the top bunk, again tends to suggest a causal connection between his housing assignment and his injury. (*Id.*)

Thus, the most acute question presented on Defendants' Motion is whether Hoyt has pled, with sufficient specificity, that Moving Defendants controlled Hoyt's housing assignment and acted with deliberate indifference in placing him on the top bunk. Under *Durham* and *Farmer*, this allegation requires a two-fold showing, first that Moving Defendants actually made the decision which placed Hoyt in harm's way, and second that they did so even though they knew of the harm that Hoyt might incur based on that decision.

As to the first showing, Hoyt's allegations are sufficient to give rise to an inference that Moving Defendants control housing assignments at SCI-Phoenix. This is clear from non-moving Defendant Smith's response to Hoyt when Hoyt complained about his housing assignment, wherein Smith referred Hoyt to the Medical Staff "for them to change it." (ECF No. 8 at 4.)

Ostensibly, from Smith's response, Hoyt inferred that the Moving Defendants were likely the decision-makers – an allegation furthered in Hoyt's response to the Medical Staff's motion. (ECF No. 12 at 12.) ("Defendants now attempt to minimize their conduct as an oversight, but that is a mischaracterization of the allegations. Plaintiff alleges that housing assignments are totally controlled by the medical staff/Movants.") Indeed, that Smith directed Hoyt to seek help from Moving Defendants supports the plausibility of the allegation and renders it more than a "mere hypothesis." *Gannaway*, 150 F.Supp.3d at 526-27.

As to the second, Plaintiff's allegations are also sufficient to give rise to an inference that the decision to move him to the top bunk was made with deliberate indifference to the risk that he might be seriously injured. (ECF No. 8 at 5.) Hoyt alleges in his complaint that "all Defendants knew or should have known about Plaintiff's pre-existing condition that required bottom bunk status." (*Id.*) This allegation notwithstanding, Hoyt further alleges that he remained, after his fall, assigned to the top bunk for approximately one week. (*Id.*) Thus, whether Moving Defendants had the requisite knowledge to give rise to a claim of deliberate indifference before his injury, their alleged decision to return him to the top bunk over the course of his first week of treatment plainly gives rise to a plausible inference of deliberate indifference. As alleged, Moving Defendants certainly had awareness of the actual harm that Hoyt suffered within 3 days of his transfer to the top bunk, and therefore may arguably have been deliberately indifferent in not promptly correcting this placement.

Ultimately, at this stage in the litigation, the Court is satisfied that Plaintiff's complaint contains "sufficient factual matter" to show that his Eighth Amendment claim is plausible, as it allows for a "reasonable inference that the defendant[s are] liable for the misconduct alleged." *Fowler*, 573 F.3d at 210. Defendant's motion to dismiss this count is, accordingly, denied.

**B.  Plaintiff's State Law Negligence Claim**

Second, Hoyt brings before this Court a claim that defendants breached the applicable duty of care under state negligence law by failing to provide safe conditions. (ECF No. 8 at 6-7.) The parties' primary disagreement here is over the theory of negligence Hoyt has asserted. Hoyt, as alleged originally in his Complaint and as indicated in his response to the Motion, asserts a claim for simple negligence. (ECF No. 8 at 6-7; ECF No. 12 at 12-13.) Moving Defendants do not dispute the factual allegations giving rise to the negligence claim, but instead argue that Hoyt is truly asserting a claim for professional, not simple, negligence.

The difference is material – a plaintiff asserting a claim for professional negligence under Pennsylvania law must comply with Pennsylvania Procedural Rule 1042.3, which provides that within sixty days of filing his complaint, he must file a Certificate of Merit (COM). The COM, in turn, requires an attestation that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the [medical treatment described] in the complaint fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm." Pa. R.C.P. 1042.3.[9] A plaintiff asserting a claim for simple negligence, in contrast, is not bound by the COM requirement.

Moving Defendants did not raise Rule 1042.3 as a basis on which to dismiss Hoyt's complaint in their Motion. (ECF No. 11-2 at 10.) Instead, recognizing Hoyt had more time to comply with Rule 1042.3, Moving Defendants "reserve[d] the right to move for dismissal of the[] professional negligence claims in the future if necessary." (*Id.*) Upon Defendants' Motion, Hoyt

---

[9] Rule 1042.3 is, under binding Third Circuit precedent, substantive law which must be applied by federal courts under *Erie R.R. v. Tompkins*, 304 U.S. 64. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011).

responded that he "withdrew [his] professional negligence claim," but did not withdraw his simple negligence claim, for which no COM is required. (ECF No. 12 at 12-13.) In reply, Medical Defendants then substantiated their Rule 1042.3 argument, that Hoyt's allegations amount to a "medical malpractice" claim which "cannot be passed off as a claim of ordinary negligence in this way." (ECF No. 13 at 2.) In response, Hoyt filed COMs with respect to each of the Medical Defendants. (ECF Nos. 14-4; 14-5.) Each, however, assert the following: "Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant." (*Id.*)

Where the "conduct at issue [in a complaint] constituted an integral part of the process of rendering medical treatment," that complaint is asserting a malpractice cause of action. *Iwanejko v. Cohen & Grigsby, P.C.*, 249 Fed. Appx. 938, 944 (3d Cir. 2007); *see also Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322-23 (Pa. Super. Ct. 2007). Here, Hoyt has based his negligence claim allegations on the fact that Moving Defendants were in control of the decision regarding his bunk status, and medical treatment following his injury. (ECF No. 8 at 3-4.) Thus, the root of Hoyt's complaint appears to be "predicated on factors such as the physician-patient relationship," which alleges professional malpractice, rather than ordinary negligence. *Grossman v. Barke*, 868 A.2d 561, 573 (Pa. Super. Ct. 2005).

Accordingly, the Court agrees with Moving Defendants that "Hoyt is bringing claims against Dr. Letizio and PA Kaminsky which are based entirely on the medical treatment provided to him" and that, therefore, "liability can only be proven by establishing professional negligence." (ECF No. 13 at 3-4.) Though Hoyt has facially complied with Rule 1042.3 by filing COMs, these filings lack the attestation of a medical professional necessary to substantiate his professional negligence claims. Because of this procedural defect, the Court grants Defendants' Motion as to

the negligence claim without prejudice, and grants Hoyt leave to amend his complaint to allege a professional negligence claim, and re-file the compliant and COMs, should he seek to comply with Rule 1042.3.

## V.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss with respect to Count I of Hoyt's complaint, and GRANTS Defendants' Motion to Dismiss with respect to Count II, without prejudice, allowing Hoyt leave to amend his complaint with respect to Count II. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**